UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| In Re Louie J. Aquilino and Robin Aquilino, Debtors. | HONORABLE KAREN M. WILLIAMS |
| Spector Gadon Rosen Vinci, P.C., Appellant, v. Louie J. Aquilino and Robin Aquilino, Appellees. | Civil Action No. 1:23-CV-01099-KMW  OPINION |

**Daniel J. Dugan, Esq.**
Spector Gadon Rosen Vinci, PC
1635 Market Street, 7th Floor
Philadelphia, PA 19103

*Counsel for Appellant Spector Gadon Rosen Vinci P.C.*

**Shawn Daniel Hutchison, Esq.**
Law Offices of S. Daniel Hutchison, P.C.
135 North Broad Street
Woodbury, NJ 08096

*Counsel for Appellees Louie and Robin Aquilino*

**WILLIAMS, District Judge:**

**I. INTRODUCTION**

Spector Gadon Rosen Vinci, P.C., ("Spector Gadon")—former bankruptcy counsel for Chapter 7 debtors Louie and Robin Aquilino (the "Aquilinos")—appeals the Amended Memorandum Decision and Order of the U.S. Bankruptcy Court for the District of New Jersey, barring it from pursuing its private claims against them for unpaid legal fees, which it was pursuing in a separate action in the U.S. District Court for the Eastern District of Pennsylvania. This Court exercises appellate jurisdiction over this matter pursuant to 28 U.S.C. § 158(a). For the reasons set forth below, the decision of the Bankruptcy Court is **REVERSED**.

1

## II. BACKGROUND

Spector Gadon is a Philadelphia-based law firm that represented the Aquilinos for over two years in the underlying bankruptcy proceeding. In March 2020, the Aquilinos, both of whom are residents of New Jersey, engaged Spector Gadon to prepare and file on their behalf a personal petition for voluntary bankruptcy under Chapter 7. (Doc. No. 287-4 at 2.) Having previously represented the Aquilinos in an unrelated civil matter, Spector Gadon agreed to undertake the representation. (*Id.* at 2–3.) On April 1, 2020, Spector Gadon informed the Aquilinos that the firm would prepare and file their bankruptcy petition for a flat fee of $6,500, plus a $335 filing fee. (*Id.* at 3.) Though, Spector Gadon claims that it explicitly and repeatedly informed the Aquilinos that they would be charged additional legal fees if their bankruptcy required any post-petition work. (*Id.*) As agreed, Spector Gadon subsequently prepared and filed the Aquilino's Chapter 7 Voluntary Bankruptcy Petition. (Doc. No. 1.)

### A. The Bankruptcy Proceedings

According to Spector Gadon, the Aquilinos initially represented to the firm that their bankruptcy "would be a simple and straightforward no[-]asset Chapter 7 liquidation." (Doc. No. 287-4 at 2.) However, Spector Gadon claims that the scope of its representation dramatically expanded following the filing of their Petition because the Aquilinos had allegedly attempted to conceal the existence and value of various assets. (*Id.* at 3–4.) To mitigate the effects of their non-disclosure, Spector Gadon states that it was forced to independently conduct its own analyses of the Aquilinos' assets without their cooperation, correct their bankruptcy schedules numerous times, and defend them against various adversary proceedings—all of which, Spector Gadon contends, were caused by the Aquilinos' failure to candidly cooperate in their own bankruptcy. (*Id.* at 4.)

Of course, such efforts were time-consuming, and Spector Gadon billed the Aquilinos for these post-petition services on an hourly basis, which were detailed in billing statements and sent to the Aquilinos every month. (*Id.* at 3.) According to Spector Gadon, the Aquilinos never protested or objected to their monthly invoices or otherwise disputed their accuracy. (*Id.* at 4.) To the contrary, the Aquilinos reportedly praised Spector Gadon's work throughout its representation. (*Id.*)

By August 2021, the Aquilinos had accumulated approximately $151,000 in attorneys' fees, as well as a $1,200 balance in litigation costs. (*Id.*) To facilitate the payment of these bills, the Aquilinos entered into a letter agreement with Spector Gadon dated August 23, 2021, in which Spector Gadon agreed to reduce their outstanding balance to $113,000 (hereinafter, the "Letter Agreement") (*Id.* at 12.) In exchange for this reduction, the Aquilinos agreed to pay Spector Gadon $100,000, conditioned on the Aquilinos sale of one of their properties located in Sewell, New Jersey (the "Residence"). (*Id.* at 5.) The Letter Agreement further provided that payment of the remaining $13,000—as well as any other costs and fees the Aquilinos accrued in the interim—would be paid after payment to Spector Gadon of the $100,000. (*Id.*) Importantly, as will become apparent later, the Residence was not part of the bankruptcy estate. (*Id.* at 5.)

With the Letter Agreement in place, Spector Gadon continued to represent and defend the Aquilinos in their bankruptcy. However, on November 22, 2021—and unbeknownst to Spector Gadon—the Aquilinos closed on the sale of the Residence for $745,000. (*Id.*) The Aquilinos neither informed Spector Gadon of the sale nor paid any of their outstanding legal fees. (*Id.*) Apparently reneging on their prior promises, the Aquilinos allegedly elected instead to purchase another residence in New Jersey and repay a debt owed to Robin Aquilino's parents. (*Id.*) When Spector Gadon requested a copy of the settlement sheet for their closing, the Aquilinos reportedly

3

refused. (*Id.*) During this same time, Spector Gadon states that the Aquilinos sold another one of their real estate properties located in Florida for $1,025,000, which similarly was not part of the bankruptcy estate. (*Id.*)

Ultimately, Spector Gadon withdrew their representation, with the Bankruptcy Court's approval, and their appearance was substituted with that of the Aquilinos' current counsel. (Doc. Nos. 192, 207–208.)

B. **The Collection Action**

At the time Spector Gadon withdrew its appearance from the Bankruptcy Court, the Aquilinos had accumulated approximately $229,000 in attorneys' fees and costs for the post-petition services the firm rendered in their bankruptcy case. (Doc. No. 287-5 at 2.) On March 9, 2022, Spector Gadon—invoking diversity of citizenship jurisdiction—filed a Complaint against the Aquilinos in the U.S. District Court for the Eastern District of Pennsylvania (the "Collection Action"). (*Id.* at 2–31.) Seeking to enforce the Letter Agreement, Spector Gadon asserted three causes of action under Pennsylvania law for breach of contract, unjust enrichment, and "account stated." (*Id.* at 6–8.)

Thereafter, on April 11, 2022, the Aquilinos filed a motion to dismiss Spector Gadon's Complaint for improper venue in which it cited to, among other things, the pendency of the Aquilinos' bankruptcy action. (Doc. No. 287-6.) In the alternative, the Aquilinos moved to have the case transferred to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). (*Id.* at 20–24.) The Honorable Juan R. Sánchez subsequently issued a written opinion denying the Aquilinos'

motion in its entirety, finding that Spector Gadon's forum preference was entitled to greater weight and that the pendency of the bankruptcy action did not alter that conclusion.[1] (Doc. No. 287-11.)

Undeterred by Judge Sánchez's decision, the Aquilinos proceeded to file a motion with the Bankruptcy Court under 11 U.S.C. § 329 and Federal Rule of Bankruptcy Procedure 2016, asking it to intervene in the Collection Action and determine the reasonableness of Spector Gadon's legal fees (the "Motion for Review"). (Doc. No. 285-1.) Specifically, the Motion for Review sought an order "staying the collection action filed in the Eastern District of Pennsylvania so that [the] Bankruptcy Court [could] determine whether or not [Spector Gadon] had proper Fee Agreements with the Debtors and to review [Spector Gadon's] detailed billing to determine the appropriateness of the fees/expenses and whether or not they are excessive/unreasonable, and granting such other and further relief as the [Bankruptcy] Court deems just and proper."[2] (Doc. No. 285 at 1.)

Shortly thereafter, the Aquilinos proceeded to file a motion in the Collection Action requesting that Spector Gadon's case against them be stayed pending the Bankruptcy Court's decision on their Motion for Review—a request that Judge Sánchez swiftly denied:

---

[1] *See also Spector Gadon Rosen Vinci, P.C. v. Aquilino*, No. CV 22-905, 2022 WL 3139855, at *3 (E.D. Pa. Aug. 5, 2022).

[2] Procedurally speaking, this was a rather unusual move. Typically, such motions are filed either by debtors' attorneys who seek permission from the bankruptcy court to be compensated from the bankruptcy estate, or by the bankruptcy trustee who objects to the debtor attorney's compensation from the estate. *See, e.g.*, *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 130 (3d Cir. 2000) ("[Section] 329 contemplates the prepetition payment of fees to the debtor's attorney from the debtor [estate], subject to court review for reasonableness."). Neither occurred here. *See, e.g.*, *In re EP Liquidation, LLC*, 583 B.R. 304, 322 (Bankr. D. Del. 2018) (holding that Chapter 7 Trustee lacked standing to seek return of payments for legal fees where such payments would not be property of bankruptcy estate). Apparently recognizing as much, it seems that the Aquilinos sought to preemptively justify their Motion insofar as they stated that Spector Gadon "should have filed with the [Bankruptcy] Court[] an Application for Compensation and Reimbursement of Expenses pursuant to 11 U.S.C. §329 and Federal Rule 2016," implying that their Motion was properly occasioned by Spector Gadon's failure to do so. (Doc. No. 285-1.) And although not relevant to the specific procedure to which they purported to avail themselves, the Aquilinos also insinuated that Spector Gadon's Collection Action sought payment for *pre-petition* debt, and that the firm's Complaint "could be construed as a willful violation" of the automatic stay provision under 11 U.S.C. § 362(a). As discussed further below, both of these contentions were factually and legally baseless.

5

> The Aquilinos seek to stay these proceedings while the New Jersey Bankruptcy Court considers and rules on the Motion for Review of Attorney Compensation pursuant to 11 U.S.C. § 329 which they filed five days after this Court issued a Memorandum Opinion and Order denying their motion to dismiss for improper venue. In their Motion for Review, the Aquilinos are challenging the propriety of the legal charges and fees which are the very subject of the breach of contract action instituted by Spector Gadon in this Court. The Aquilinos assert the Bankruptcy Court is "best positioned to calculate Plaintiff's legal fee due to its subject matter expertise and unique ability to evaluate Plaintiff's performance and the effectiveness of their representation of Defendants."
>
> This Court disagrees with this claim. While the Bankruptcy Court is certainly qualified to undertake a review of the fees, Spector Gadon is nevertheless entitled to a jury trial on its claim and full discovery to support its contention that its legal fees were significantly higher than anticipated because the Aquilinos misrepresented and sought to hide assets. Thus, Spector Gadon's interests would be prejudiced if a stay was granted, and this Court deferred to a decision from the Bankruptcy Court.
>
> . . . .
>
> The Aquilinos finally assert that because the Trustee and Court "will have substantial control over Defendants' assets," the Court is "unequivocally capable of providing adequate and complete relief in this matter." This contention disregards Spector's assertion that it is also seeking to recover post-petition attorneys' fees from the Aquilinos' non-bankruptcy assets. Thus, while the Trustee and Bankruptcy Court may have control over some of the assets, there are other assets arguably at issue. Consequently, a stay of proceedings is not warranted here.

(Doc. No. 291-1 at 2–3.)

C. **The Bankruptcy Court's Decision**

In response to the Aquilinos' pending Motion for Review in the Bankruptcy Court, Spector Gadon raised two primary objections. First, Spector Gadon argued that the Bankruptcy Court lacked the statutory jurisdiction to issue final orders on its claims in the Collection Action. More specifically, Spector Gadon pointed out that its Complaint "seeks only to collect post-petition fees, and only against property that has already left the Aquilinos' estate." (Doc. No. 288-1 at 8–10.) Second, Spector Gadon submitted that it was entitled to a jury trial in the Collection Action, which

6

the Bankruptcy Court was not empowered to provide. (*Id.* at 11–12.) As such, any order issued by the Bankruptcy Court affecting its entitlement to fees would necessarily deprive it of its right to have its claims heard and decided in the Eastern District of Pennsylvania. (*Id.*)

The Bankruptcy Court issued a decision on the Motion for Review on February 6, 2023 (Doc. No. 310), which was subsequently revised by way of an Amended Memorandum Decision published on February 23, 2024. (Doc. No. 316.) As a threshold matter, the Bankruptcy Court concluded that it had "core" jurisdiction over the proceeding under the Bankruptcy Code. Ultimately, however, the Bankruptcy Court did not assess the reasonableness of Spector Gadon's fees, but rather determined that the firm had failed to timely and accurately update its fee disclosure statements, thereby violating 11 U.S.C.§ 329 and Federal Rule of Bankruptcy Procedure 2016. The Bankruptcy Court did not address the merits of Spector Gadon's Seventh Amendment objection, but indicated that it was in any case unable to hold a jury trial on Spector Gadon's claims due to their sounding in state common law. (*Id.*)

As a sanction, the Bankruptcy Court (1) prohibited Spector Gadon from pursuing its outstanding legal fees in the Collection Action, regardless of whether they were for pre- or post-petition bankruptcy services; and (2) ordered Spector Gadon to disgorge any and all fees it received to date in connection with the bankruptcy. Consistent with these findings, the Bankruptcy Court issued a corresponding order granting the Aquilinos' Motion for Review, but denied it insofar as it sought to stay the Collection Action. (Doc. No. 317.)

Following Spector Gadon's timely appeal of its decision, the Bankruptcy Court granted a request made by Spector Gadon to stay its Order pending the outcome of the instant appeal. Judge Sánchez has likewise stayed the Collection Action pending this Court's review.

**III. STANDARD OF REVIEW**

"The standard of review for Bankruptcy Court decisions is determined by the nature of the issues presented on appeal." *In re Li*, 654 B.R. 25, 32 (D.N.J. 2023) (internal quotation marks omitted). Findings of fact are reviewed under a "clearly erroneous" standard and are overturned only where the District Court has a "definite and firm conviction that a mistake has been committed." *Feng Li v. Peng*, 516 B.R. 26, 34 (D.N.J. 2014) (quotation marks omitted). In contrast, legal conclusions of the Bankruptcy Court are reviewed *de novo*. *See In re Congoleum Corp.*, 414 B.R. 44, 55 (D.N.J. 2009). If a decision involves mixed questions of law and fact, the Court utilizes "a mixed standard of review." *In re Hackler*, 588 B.R. 394, 397 (D.N.J. 2018). Additionally, a Bankruptcy Court's exercise of discretion is reviewed by this Court using an "abuse of discretion" standard. *See In re Hackler*, 588 B.R. 394, 398 (D.N.J. 2018).

**IV. DISCUSSION**

In the instant appeal, Spector Garden principally reasserts the same objections it had raised in opposition to the Aquilinos' Motion for Review—that the Bankruptcy Court lacked the requisite statutory authority to issue a final order on its claims, and that an order prohibiting it from pursuing its claims in the Collection Action deprived it of its right to a jury trial under the Seventh Amendment.[3] Both of these questions trigger the Court's *de novo* review. However, because the right to a jury trial implicates a more fundamental, constitutional concern, the Court addresses it

---

[3] On both of these issues, the Aquilinos are inexplicably silent. Their brief—which contains but three pages of substantive argument—makes absolutely no reference to the Seventh Amendment, much less acknowledges Spector Gadon's arguments concerning its right to a jury trial. *See* Appellees' Br. at 16–18. The Aquilinos are equally mute on the distinction between "core" and "non-core" jurisdiction under the Bankruptcy Code and likewise ignore Spector Gadon's explicit arguments regarding the same. That these issues conspicuously appear front-and-center in Spector Gadon's opening brief leads this Court to conclude that the Aquilinos have conceded Spector Gadon's arguments and waived their right to oppose them. *See O'Neal v. Middletown Twp.*, No. 3:18-CV-5269, 2019 WL 77066, at *3 (D.N.J. Jan. 2, 2019) (noting that the failure to "present any substantive argument in opposition" constitutes a concession and waiver).

first. *See* G COLLIER ON BANKRUPTCY 2 (16th 2024) (noting that courts must determine whether a party has a right to a jury trial even "[i]f the proceeding is found to be core"); *see also Germain v. Connecticut Nat. Bank*, 988 F.2d 1323, 1327 (2d Cir. 1993) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989)) ("Neither Congress nor the courts may deprive litigants of their constitutional rights simply by labeling a cause of action 'core.'").

The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right by jury shall be preserved[.]" U.S. CONST. amend. VII. The Supreme Court has consistently interpreted the phrase "Suits at common law" to refer only to "suits in which *legal* rights were to be ascertained and determined," as opposed to suits "where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera,* 492 U.S. at 42 (emphasis in original). "An action for money damages based on a breach of contract is traditionally a legal claim." *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1245 (3d Cir. 1994). So too is a Pennsylvania breach-of-contract action for unpaid legal fees. *See Marshall, Dennehey, Warner, Coleman & Goggin, PC v. Boyajian*, 361 F. App'x 432, 433 (3d Cir. 2010).

However, within the bankruptcy context, it has long been recognized that a creditor effectively forfeits its right to a jury trial when it files a proof of claim with a bankruptcy court. *See Katchen v. Landy*, 382 U.S. 323, 338 (1966); *Granfinanciera*, 492 U.S. at 58; *Langenkamp v. Culp*, 498 U.S. 42, 45 (1990). A proof of claim is a creditor's formal assertion of a right to payment from the bankruptcy estate. *See* 11 U.S.C. § 501. Filing a claim against a bankruptcy estate is significant because it triggers the bankruptcy court's power "to disallow [the creditor's] claims, even though . . . the Seventh Amendment would have entitled creditors to a jury trial had they not tendered claims against the estate." *Granfinanciera*, 492 U.S. at 59 n.14. Simply stated, "[t]here is

9

no right to trial by jury where the claims allowance process is implicated" because it essentially "converts the creditor's legal claim into an equitable claim to a *pro rata* share of the *res*." *Billing*, 22 F.3d at 1247 (quoting *Katchen*, 382 U.S. at 336) (quotation marks omitted); *see also Langenkamp*, 498 U.S. at 45 (holding that creditors who file proofs of claim against the estate are not entitled to a jury trial on matters affecting the allowance of those claims).

Following this same rationale, courts have observed that debtors' attorneys similarly waive their Seventh Amendment rights when they file an application for fees under 11 U.S.C. § 329 and Bankruptcy Rule 2016. *See Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1253 (3d Cir. 1994) (noting that bankruptcy attorneys' request for a jury trial "would be refused [if] . . . they had filed a claim for fees with the bankruptcy court"). "Although a professional's application for fees is governed by a different section of the Bankruptcy Code from a creditor's proof of claim, a professional's application for fees is also a request for payment from the bankruptcy estate." *Shubert v. L. Offs. of Paul J. Winterhalter*, 531 B.R. 546, 553 (E.D. Pa. 2015). By "seeking and accepting payments of fees and claiming a share of the estate as a priority creditor," attorneys "participate[] in the process of allowance and disallowance of claims," and consequently "consent[] to the jurisdiction of th[e] [bankruptcy] court" to hear those claims. *In re Simmons*, 205 B.R. 834, 850 (Bankr. W.D. Tex. 1997) (relying on *Billing*).

Here, it is without question that the Seventh Amendment entitled Spector Gadon to a jury trial in the Collection Action. *See Billing*, 22 F.3d at 1245; *Marshall Dennehey*, 361 F. at 433. Spector Gadon preserved that right when it not only requested a jury trial in the Collection Action in the first instance, but also when it objected to the Aquilinos' Motion for Review on those same grounds. *See* FED. R. CIV. P. 39; *In re Trib. Media Co.*, 902 F.3d 384 (3d Cir. 2018) (noting that a claimant impliedly consents to jurisdiction of bankruptcy court where it fails to object).

Bankruptcy attorneys do not automatically forfeit their Seventh Amendment rights solely because they represented a debtor in a bankruptcy proceeding. That is particularly true for debtors' attorneys in Chapter 7 proceedings who, like Spector Gadon, seek only to be compensated for post-petition legal services from outside of the bankruptcy estate:

> [L]egal fees which are segregated from prepetition legal fees and incurred for postpetition legal services constitute a postpetition debt and are, therefore, an obligation of the Chapter 7 debtor (as opposed to the estate) which he or she has an obligation to pay out of his or her postpetition earnings or exempt assets.

*In re Mansfield*, 394 B.R. 783, 793 (Bankr. E.D. Pa. 2008). Such arrangements are not only permissible, but are in fact rather common:

> First, [attorneys] structure their engagement this way because [they] (and other professionals) cannot be compensated from estate property in chapter 7 cases, and therefore they have to look to the debtor for payment if no third-party (such as a family member) is willing to pay the fees. Second, because attorney fees owed under a pre-petition engagement agreement are generally eligible for discharge in bankruptcy, legal counsel unbundle their services so that fees for services provided after a bankruptcy filing may be incurred and paid without violating the discharge injunction against the collection of prepetition debts under 11 U.S.C. § 524.

*In re Smith-Freeman*, No. 23-20669-CMB, 2024 WL 270395, at *10 (Bankr. W.D. Pa. Jan. 24, 2024) (citations omitted); *see also* FED. R. BANKR. P. 2016(a) (requiring application for fees only where professional seeks compensation "from the estate").

Spector Gadon's Complaint in the Collection Action clearly seeks to enforce the Letter Agreement in which the Aquilinos' promised to pay for their outstanding, post-petition legal fees out of an asset that was decidedly not part of the bankruptcy estate. Having now appeared before three different courts, Spector Gadon continues to assert what it has consistently represented all along—that it "is only seeking **post-petition** attorney fees and costs, and [] is only seeking to recover those fees and costs from **non-bankruptcy assets**." Appellant's Br. at 2 (emphasis in original). Spector Gadon has filed with the Bankruptcy Court neither a proof of claim nor an

11

application for fees, for the simple reason that the Eastern District of Pennsylvania is the proper forum to have its claims heard and decided. Spector Gadon's Complaint did not "[c]learly . . . [arise] out of the claims allowance process," and under these circumstances, its compliance or non-compliance with its disclosure obligations did not convert its legal claims "into an equitable claim to a *pro rata* share of the *res*." *Billing*, 22 F.3d at 1247 (quotation marks omitted). To the extent the Aquilinos take issue with the reasonableness of Spector Gadon's fees or the adequacy of its disclosures, their concerns may be appropriately raised and addressed in the Collection Action. *See McKenzie Const., Inc. v. Maynard*, 758 F.2d 97, 100 (3d Cir. 1985) ("An attorney has the burden of proof as to the reasonableness of his fee when he sues to recover from his client."); *Danise v. Saxon Mortg. Servs. Inc.*, 738 F. App'x 47, 50 (3d Cir. 2018) (discussing application of judicial estoppel for disclosure failures in bankruptcy proceedings).[4]

If a party has retained its right to a jury trial under the Seventh Amendment, a bankruptcy court may only hear and adjudicate that party's legal claims if all parties consent and the district court has authorized the bankruptcy court to conduct jury trials. *See* 28 U.S.C. § 157(e). "If any of these prerequisites are missing, the action must be litigated in the district court." G COLLIER ON BANKRUPTCY 2. None of these prerequisites are present here. Try as they might, the Aquilinos cannot leverage the Bankruptcy Code to drag Spector Gadon's claims into their preferred forum.

---

[4] While the Court need not address the other issues Spector Gadon has designated for this appeal, it does recognize that bankruptcy courts certainly have the authority to deny attorneys' fee requests when the latter fail to comply with their disclosure requirements under 11 U.S.C. § 329 and Bankruptcy Rule 2016. But while that authority has been exercised in Chapter 7 cases, such a sanction has almost always followed an attorney's application for fees filed under those very same provisions. *See, e.g.*, *In re 38-36 Greenville Ave LLC*, No. 21-2164, 2022 WL 1153123, at *4 (3d Cir. Apr. 19, 2022) (affirming "core" jurisdiction to disgorge legal fees paid from non-estate source where attorney had still applied for payment from the estate); *see also* 28 U.S.C. § 157(b)(2)(A) (vesting bankruptcy courts with core jurisdiction over "matters concerning the administration of the estate"); 3 COLLIER ON BANKRUPTCY ¶ 329.01 (16th 2024) ("The disclosure requirement of section 329(a) facilitates the court's examination pursuant to section 329(b).").

Nor can they compel Spector Gadon to forfeit its right to a jury trial on those claims, particularly when it has consistently asserted it along the way.

## V.  CONCLUSION

The Court echoes Judge Sánchez and now confirms, as a matter of law, that the Seventh Amendment entitles Spector Gadon to have its claims heard and decided in the U.S. District Court for the Eastern District of Pennsylvania. The Bankruptcy Court's Amended Memorandum Decision and Order are accordingly **REVERSED**.

Dated: March 30, 2024

*/s/ Karen M. Williams*
KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE